James O. Shackeleokd, J.,
delivered the opinion of the Court.
This suit is an action of ejectment, brought in the Law Court of Memphis, by the heirs of William Met-calf, to recover the possession of a lot in the City of Memphis, known on the plan of the city, as No. 41. The facts necessary to be' stated to understand the principles involved, are substantially as follows:
William Metcalf, the ancestor of the defendants in error, was the owner of the lot in controversy, by purchase. He had an agent residing in the City of Memphis, who had control of the lot, and attended to the payment of the taxes. In 1845, this lot was reported for the non-payment of the taxes for that year, to the January Term, 1867, of the Circurt Court. In February following, during said term, a judgment of condemnation of this lot in suit, was rendered, and it was directed by the court, to be sold for the payment of the taxes, costs etc., thereon. The report of the collector upon which the order of condemnation was made, is as follows:
*403 TOWN LOTS IN THE CITY OE MEMPHIS.
Name of No. of lots owner. listed. No of Lot. Value. Tax Coll Cl’k Pri. R. Col. Total.
Wm. Metcalf. 41 500 125 100 150 150 50
Afterwards, in July, tke lot in controversy, was sold by the collector, and B. T. Dowell became the purchaser. The taxes due for the year 1847, not being paid, a report similar to the one set out was made, and a judgment of condemnation had. The same party became the purchaser at the time of the sale of the lot in controversy. It was occupied by the tenant of William Metcalf, and continued in his possession until 1852, when, for some cause, the house was pulled down.
The taxes upon the lot were annually paid by William Metcalf, until his death, in 1856, or 1857, and by his heirs, until the possession was obtained by the plaintiffs in error, in 1859. There is some testimony, that the taxes upon this lot were paid in 1846 and 1847, by the agent of William Metcalf, though it' is not satisfactory. It appears in 1859, the plaintiffs in error, obtained by some means, the possession of the lot.
A bill was filed by the heirs of Metcalf, in the Chancery Court at Memphis, in May 1859, against the purchaser and the collector, to remove the cloud upon the title, and to enjoin the collector or his successor from making a deed to the purchaser. An injunction was awarded on the • 28th of October, 1859. This suit was brought on the 27th of March, 1861. The complainants by leave of the Court, dismissed their *404 bill. On the 28th day of March; 1861, the deed to A. Dowel was executed and acknowledged by George R. Powel, the revenue collector, and successor of James Neal, which deed recites the fact of the non-payment of the taxes for the years 1846 and 1847. •
The deed recites the judgment of condemnation, the award of sale, the issuing of the order of sale, that the lot was duly advertised and sold, that the same was purchased by A. Dowel, B. A. Dowel and Wm. Griffin, for the sum of $5.75, the amount of the taxes, costs and charges, and conveys the lot to A. Dowel, and his heirs; the deed bears date on the 28th of Feb., 1861. Afterwards B. E. Dowel and Wm. Griffin were, by leave of the Court, permitted to be made parties defendant to the suit. They introduced and read in evidence, two deeds executed on 21st day of January, 1867, to them, for the lot in question, by Philip Garvin, the tax collector for the year 1867; of the county of Shelby, in which he recites the non-payment of the taxes for the years 1846 and 1847; the report and judgment of condemnation, the due advertisement , and sale of the lot by James Neal, the former tax collector of Shelby County; the purchase by Alf. Dowel and B. F. Dowel, whom he states were partners in the purchase of the lot. This deed was duly acknowledged. It appears from the testimony of the collectors, Geo. W. Powel and Philip Garvin, who executed the deeds, they knew nothing of the facts recited in the deeds executed by them, but made the same because they thought it their official duty.
The charge of the Court is very long and prolix, *405 and is exceptionable. A verdict was rendered for Metcalf’s beirs, and an appeal was taken to this Court. Various questions have been argued, but we deem it only necessary to notice those that go to the merits of the case; and though the charge of the Court may be erroneous, if we can see from an .investigation of the case, the plaintiffs in error have no title upon which they can recover, the judgment ought to be affirmed.
The proceeding under which the lot in controversy was sold, is under the fourth section of the Act of 1835, which provides, in case there shall not be any goods and chattels on which the sheriff or collector can make distress for public taxes, it shall be the' duty of the sheriff or collector, to make report thereof to the Circuit Court of his county at the first term' in each year, for the preceding years; which report shall be in the following form as near as may be, to-wit:
“I, A B, sheriff or collector of the public taxes, for the county of -, do hereby, report to court the following tracts of land, town lots, as having been given in for taxes for the year, and the taxes thereon remain due and unpaid, and the respective owners thereof have, no goods and chattels within my county on which I can distrain for the taxes, to-wit: A B, one tract of land, - acres, lying in civil district No. —, valued at $-, taxes -
Such is the form given in the Act. How far has this provision of the law been complied with in the report, condemnation and sale of the lot in suit? The report of the collector sets out the name of William Metcalf, the owner. The number of the lot is cor *406 rectly described. Tbe other items in figures are set out without any designation of the amount of taxes, costs, etc. There is no use of the words dollars or cents, ,nor is there any abbreviation, mark, word or character on the record of the judgment to indicate the amount' of the taxes for which the judgment of condemnation was rendered against the land.
The form of the judgment is prescribed in the — section of the Act of 1835. Does this judgment of condemnation reasonably conform to the Act, and is it reasonably certain? By the provisions of the first section of the Act of 1844, it is provided, that, in all cases of sales of land hereafter made for public taxes under the provisions of the laws now in force, it shall be sufficient to make such sale valid, and communicate a good title to the purchaser, that the land sold lies in the county in which it has been reported for non-payment of taxes thereon; that it has been duly reported, that an order of sale has been awarded, and that the sale of said land has been duly autkor-ized. To establish these facts, the sheriff’s deed reciting their existence shall be prima fade evidence; and all judgments or orders of sale shall be conclusive unless the person wishing to show the irregularity of the same can prove the taxes were duly paid before such judgment or order of sale was rendered. By the fourth section of the Act, it is provided, no sale shall be deemed insufficient because the number of acres is not precisely named, . nor the amount of taxes precisely given; but if the same is stated with certainty to a common intent, it shall be sufficient; and all laws upon *407 tbe subject of tax sales shall receive a liberal construction.
Tbe evident intention of tbe Legislature was, that tbe judgment and sale of land for taxes should be held good, if there was a reasonable compliance with tbe law. Let us test this condemnation and sale by tbe provisions of tbe Act of 1844: Tbe name of tbe owner of tbe lot is correctly given ; tbe number is' properly set forth, but tbe record fails to disclose, with certainty to a common intent, tbe amount of tbe taxes, costs, etc. We see tbe figures 500 under tbe bead of value, 125 under tbe bead of tax, 100 under tbe bead of Gob, 150 under that of clerk, etc. There is nothing to show for what these figures stand; whether they represent dollars or cents, or dollars only. There is no mark to designate tbe meaning. It is said wé may read tbe report and judgment ' of condemnation, and knowing tbe statute under which said judgment was rendered, would understand its proper connection, meaning and object; but the Act provides, the same must be stated with certainty to a common intent. Is this so? We think not. There is nothing to show for what they stand; whether for dollars, cents, or what they indicate. Tbe law provides, all judgments in courts of record shall be rendered in dollars and cents, and all executions shall issue accordingly, sec. 1942 of tbe Code. We cannot say from this record, what the amount is for which tbe lot was condemned to be sold for tbe taxes, costs and charges. A judgment must be complete within itself; it cannot be made certain by ref *408 erence to other entries in the same record:- McClelland vs. Cornwell, 2 Cold., 300.
It was settled by the Supreme Court of Illinois, 20 Ill., 338, that the judgment must clearly show the amount of the tax for which it was rendered. The figures 248, without some mark indicating for what they stand, in a column, at the head of which is the word “tax,” is not sufficient: See also Blackwell on Tax Titles, 202.
This question came before the Supreme Court of the United States, reported in 1 Wal., 398; in which it was held, where there was no mark, word or character} on the record of the judgment, to' indicate the amount of the taxes for which it was rendered against the land, the judgment was void. The facts of that case are very similar to the case under consideration. We are satisfied, upon principle and authority, the judgment rendered against the lot in controversy, condemning it for sale for the taxes for the years 1846 and 1847, is void, and the sale communicated no title to the purchaser.
We might rest the case' here, as the judgment being void, is decisive of the question. But we deem it proper to determine other questions arising upon the record. It appears the lot was sold in 1847 and 1848, for the taxes, and the deed was not executed until 1861, by Powell, the successor of Neal. The testimony of this officer, is, that he knew nothing of the recitations in the deed; that he executed it in obedience to what he thought his official duty. Here, more than *409 twelve years Rad elapsed from the sale of the property until the execution of the deed. In the very nature of things, the officer could know nothing of the transaction; and after such a lapse of time, there is reasonable presumption of abandonment. But be that as it may, it is unnecessary for us now to decide.
The statute provides, it shall be sufficient to make the sale valid and communicate a good title to the purchaser, that the land sold, lies in the county in. which it has been reported for the non-payment of the taxes thereon; that it has been duly reported; that an order of sale has been awarded; and that the sale of said land has been duly advertised; and to establish these facts, the sheriff’s deed, reciting their existence, shall be prima faoie evidence.
These facts are recited by the deed of the successor of the collector who sold the lot. The deed further recites, that he sold the lot under a regular order of sale, or venditioni exponas, that issued to him. The testimony of the officer who made the deed, is, that he had no knowledge of the facts; that he made the deed in obedience to what he thought his duty. Ordinarily, the recitations in a sheriff’s deed, are evidence of the facts, so far as made evidence by the statute; but the facts recited are only prima fade evidence of such facts, and may be rebutted. In the case before the Court, the lapse of time from the sale to the execution of the deed, is such, that the proof of the officer, that he knew nothing of the facts recited, is sufficient to rebut the presumption created by the statute. But, looking to the record, we see the lot lay in the county; that it was *410 reported for tbe non-payment of the taxes; tbat an order of sale was awarded. There is nothing in the record to show it was duly advertised, except a report of the officer to court, that he had advertised the same. There is nothing in the record to show any order of sale, or venditioni exponas, ever came to the hand of the collector who made the sale, or whether he had any process in his hands at the time of the sale. In the case of Gaugh and Wife vs. Henderson, 2 Head, 632, this Court held the recitals in a sheriff’s deed, made soon after the sale, that he had the writ in his hands, is not evidence of the fact. And there is nothing in this record, to show that any order of sale, or venditioni exponas, ever issued, or that the sheriff or collector sold the lot under any process in his hands. The recital in the collector’s deed is no evidence of this fact.
This is essential; without such order or process in his hands, the officer had no authority to make the sale; and to make the sale valid, it should affirmatively appear it had issued to him before the sale. In judicial sales, the property of the debtor cannot be sold and held by the purchaser, without proof of judgment and execution. An order of sale, or venditioni exponas, in cases of this character, is indispensable. Though the order of sale may not come under the name of any common law execution, yet it comes clearly within the functions, and supplies the place of an execution. It is a process issuing from a court, to enforce a judgment, and according to well settled principles, an officer cannot sell real estate without it: 6 Wallace, 556; 3 Haywood, 38; Blackwell on Tax Titles, 251. The *411 sheriff, in tbe levy and sale of land, acts under a mere naked power conferred by tbe process, and to be executed in conformity to its directions. Tbe power ceases on tbe return day of tbe writ, and until that power is resumed, no valid sale can be made: Overton vs. Perkins, 10 Yerger, 328.
There is no difference between a venditioni exponas and a fi. fa.; one or tbe other a sheriff must have, to act under: 1 Swan, 142. It follows, therefore,, there being no writ of venditioni exponas, under which the collector sold the lot, the sale, for that reason, is void.
Other questions have been discussed with much learning and ability; but, inasmuch as we are of opinion the sale is void for the reasons stated, it is unnecessary for us to express any opinion upon them; and though the Circuit Judge erred in his instruction to the jury, we are satisfied the plaintiffs in error have no title; and the judgment must be affirmed.
Abdbews, J., concurred in the result, on the first ground above mentioned.